UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
FEB 15 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-129-GWU

TIFFANY PHILPOT,     PLAINTIFF

VS.     **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY     DEFENDANT

## INTRODUCTION

The plaintiff appeals from the negative administrative decision on an application for Child's Supplemental Security Income benefits. The case is before the Court on cross-motions for summary judgment.

## LAW APPLICABLE TO CHILD'S SSI BENEFITS

As of 1996 <u>strict</u> standards for child's SSI claims were adopted. The Welfare Reform Act, P.L. No. 104-193, 110 Stat. 2105, provides that:

> An individual under the age of eighteen (18) shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than 12 months.

Thus, a child's SSI claim can be granted now only if there is a "marked and severe functional limitation(s)." The impairment must meet, medically equal, or functionally equal in severity one of the Listing of Impairments (LOI) found at 20 C.F.R. Part 404,

Subpart P, Appendix 2. 20 C.F.R. Section 416.924.

The implementing regulations require the agency to determine if the child's impairment(s) meet any LOI sections found at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. Section 416.924. If this step is not satisfied, the fact finder is required to consider limitation of specific functioning, broad areas of development or functioning, episodic impairments, and limitations related to medication effects to determine "functional equivalence" to the LOI. Section 416.926a. Functional equivalence is established if the child has one area of extreme functional limitations (i.e., very serious interference with functioning) or two areas of marked limitation (i.e., serious interference with functioning). Id.

## DISCUSSION

In his opinion, the administrative law judge (ALJ) found that the plaintiff had "severe" impairments relating to cystic fibrosis and orthostatic edema, but that her conditions did not meet or medically equal any of the conditions set out in the Listing of Impairments. (Tr. 17). Because she did not have at least one "extreme" limitation or two "marked" limitations in the functional domains, according to the ALJ, her condition did not functionally equal the severity of the Listings. (Id.) Thus, she was denied Child's SSI benefits. (Tr. 18).

In her brief, the plaintiff does not indicate that she met or medically equalled the requirement of any specific Listing. In regard to the issue of functionally equalling the Listings, she seems to concede that the record contains no evidence that she was limited in the domains relating to acquiring and using information, interacting and

relating with others, or moving about and manipulating objects. The only arguments specifically raised appear to relate to the ability to attend and complete tasks, self-care, and health and physical well being.

The attending and completing tasks domain related to how well the child begins, carries through and finishes activities. (Tr. 15). Evidence in the administrative transcript reveals that the plaintiff's mother admitted that the child had never even been tested for behavioral and learning problems although her daughter was already in high school full-time (Tr. 67-69, 80, 92) and the plaintiff herself testified at the administrative hearing that she had had only six absences from school in the last year and that she was able to do her homework as a regular routine each school night (Tr. 212-213). The plaintiff was specifically observed to have age appropriate abilities in attending and completing tasks by her teacher (Tr. 95) and there was no suggestion of any need for special tutoring or therapies (Tr. 92); indeed, other portions of the record certainly show an intellectual and academic achievement beyond an average level--she was able to take classes such as Spanish II (and obtaining high marks) and Honors Biology (Tr. 88), and she scored in a high percentile in reading tests (Tr. 92). Excessive absenteeism was not noted to be a problem generally, either in her teacher's opinion or as reported to her doctors. (Tr. 99, 121, 123, 128, 133, 136). The medical reviewers found there to be no limitation in this functional domain. (Tr. 173, 180). Thus, the ALJ's conclusion that there were no limitations in this functional domain is supported by substantial evidence.

The findings regarding self-care were also supported by substantial evidence. The plaintiff's mother herself had admitted that the plaintiff had no problems with her

Philpot

ability to take care of her personal needs and safety. (Tr. 83). Her teacher indicated that that there had been no problems observed regarding the child caring for herself (Tr. 98) and, indeed, the teacher commented that the plaintiff's condition was not readily apparent to her (Tr. 99). There was said to be good compliance with her medical regimen (Tr. 121, 123, 128, 130, 133, 136, 139). The medical reviewers, again, opined that there were no limitations in this functional domain. (Tr. 171, 179). Thus, there was substantial evidence to support the ALJ's findings regarding this functional domain.

The plaintiff argues that, despite "currently doing well" with her condition, she should be considered to have a "marked" or more limitation[1] regarding health and physical well-being. The Court points out that with a progressive disease, as with one subject to frequent exacerbations and remissions, the actual status of the plaintiff over the appropriate time frame is the most significant–that is, the number and extent of the exacerbations the plaintiff currently suffers, as opposed to the mere diagnosis of a condition which might at some other time become disabling. The plaintiff's school indicated that the child was not receiving physical therapy of any kind (Tr. 92) and that she did not have an usual degree of absences (Tr. 94). Her teacher commented that had the child not spoken of her condition, she would not have noticed anything usual about her. (Tr. 99). The plaintiff's doctors at the University of Kentucky Cystic Fibrosis Center characterized her as having mild stable lung disease and good nutrition on numerous occasions in 2002 and 2003. (Tr. 125, 127, 132, 135, 138). The plaintiff's

---

[1]Since it is already obvious that this is the last functional domain, the plaintiff would have to have an "extreme" limitation to be considered disabled.

Philpot

father reported to a doctor in early 2003 that the plaintiff's lung problems had not prevented her from playing basketball and that she only had to use an inhaler episodically. (Tr. 118). The next month, her pediatrician had recorded a complaint of ankle swelling "after running track"; he noticed "some" swelling of the ankles and referred her to an orthopedic specialist. (Tr. 117). A physician from the Shriners Hopsital for Children indicated in May of 2003 that the plaintiff was healthy appearing, although she was coughing and had clubbing of the finger tips without edema; her walking and running gaits were normal as was her muscle strength, however. (Tr. 109-110). A chest x-ray done around the same time showed no evidence of active lung disease, and the heart was within normal limits. (Tr. 158). Venous duplex examinations done of the lower extremities in August, 2003 were normal. (Tr. 156). One the last office visit to her pediatrician, in April of 2004, she had only an occasional cough and no fever and had no complaints on that occasion. (Tr. 185). The medical reviewers found that the domain was associated with either "marked" limitations (Tr.. 171) or "less than marked" limitations (Tr. 179), neither of which is enough for one functional domain.

The decision will be affirmed.

This the  15  day of February, 2006.

G. WIX UNTHANK,
Senior Judge